2016 IL App (4th) 140085

NO. 4-14-0085

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 8, 2016
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DARNELL M. SMITH, | ) | No. 09CF508 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John W. Belz, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Turner and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant, Darnell M. Smith, who is serving a sentence of 18 years'
imprisonment for burglary (720 ILCS 5/19-1(a) (West 2008)), appeals the second-stage dismissal
of his *pro se* petition for postconviction relief.  See *People v. Harris*, 2013 IL App (1st) 111351,
¶¶ 46-47 (describing the three stages of a postconviction proceeding).  Before granting the State's
motion for dismissal, the trial court granted appointed counsel's motion to withdraw from
representing defendant in this postconviction proceeding.  Defendant appeals, arguing that the
motion to withdraw failed to explain why each of the claims in his *pro se* petition was frivolous
or patently without merit, as the supreme court now requires such a motion to do.  See *People v.
Kuehner*, 2015 IL 117695, ¶ 21.

¶ 2       We do not even reach that argument.  Assessing the sufficiency of the motion to
withdraw would be premature, considering that postconviction counsel never filed a certificate

pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) and the record fails to clearly show counsel's fulfillment of all of his responsibilities under that rule. Therefore, we reverse the trial court's judgment, and we remand this case for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The *Pro Se* Petition

¶ 5        In his *pro se* petition, which he filed on October 3, 2011, defendant made essentially four claims, each of which allegedly described a "clear[] violat[ion]" of his "constitutional rights."

¶ 6        The first claim was that Karen Tharp served as the prosecutor in this case even while, in a civil case pending in the United States District Court for the Central District of Illinois, Smith v. Tharp, No. 20-CV-3011 HAB-CHE, defendant was suing her for $100,000 on the ground that she had violated his constitutional rights in People v. Tharp, Sangamon County case No. 2005-CF-2083.

¶ 7        The second claim was that, on September 22, 2011, during the jury's deliberations in this case, the trial court allowed the prosecutor, Tharp, to interact with the jurors, as evidenced by the fact that when defendant and his defense counsel, Brian T. Otwell, were called back into the courtroom to hear the jury's verdict, Judge Belz and Tharp entered the courtroom from behind the judge's chambers and, following closely on their heels, were the bailiffs, Bob Kaehler and Mike Ground, and the "tamper[ed]-with jury."

¶ 8        The third claim was that Judge Belz should have granted defendant's motion to remove Tharp from her position as prosecutor because she previously "made racial statements by saying [to defendant:] 'If I get a chance to prosecute you again, I will win at all costs.' "

¶ 9    The fourth claim was that Judge Belz should have recused himself, given the appearance of partiality he had created by refusing to remove Tharp and by allowing her to tamper with the jury.

¶ 10    B. The State's Motion To Dismiss the *Pro Se* Petition

¶ 11    On December 13, 2011, the State moved to dismiss the *pro se* petition because it stated conclusions rather than facts and because, to the extent the petition stated any factual claims at all, they were barred by procedural forfeiture and *res judicata*. (Previously, on direct appeal, we affirmed the trial court's judgment. *People v. Smith*, 2012 IL App (4th) 100901, ¶ 151.)

¶ 12    C. The Motion of Postconviction Counsel
To Withdraw From Representing Defendant

¶ 13    On November 5, 2013, the appointed postconviction counsel, Daniel L. Fultz, filed a motion to withdraw from representing defendant. The "Argument" section of his motion had two headings. Under one heading, Fultz explained why he saw no arguable merit in the claim that Judge Belz should have recused himself. Under the other heading, Fultz explained why he saw no arguable merit in the claim that Tharp should have been removed from her position as prosecutor or that she had interacted with the jury during its deliberations. Specifically, Fultz reasoned along these lines.

¶ 14    1. *Defendant's Allegations Against Judge Belz*

¶ 15    Fultz explained that, to prove Judge Belz should have recused himself, defendant had to prove either that Judge Belz had felt "animosity, hostility, ill will, or distrust" toward defendant (internal quotation marks omitted) (*People v. Jones*, 219 Ill. 2d 1, 18 (2006)) or that Judge Belz had received "personal knowledge"—that is, "knowledge outside the record"—"of disputed evidentiary facts regarding the proceedings" (*People v. Cunningham*, 2012 IL App (3d)

- 3 -

100013, ¶ 15). (We are citing cases that Fultz cited in his motion.) Fultz saw no indication of bias in either of those senses. He observed that, "ordinarily[,] the fact that a judge ha[d] ruled adversely to a defendant in either a civil or a criminal case [did] not disqualify that judge from sitting in subsequent civil or criminal cases in which the same person [was] a party." *People v. Vance*, 76 Ill. 2d 171, 178 (1979). It necessarily followed that, just because Judge Belz disagreed with defendant on an issue in the *same* case, such as defendant's request to disqualify Tharp, Judge Belz was not, for that reason, disqualified to continue presiding over that case—or that he felt any animosity toward defendant. Intellectual disagreement was not animosity or ill will. And even if Judge Belz knew of the civil action that defendant had filed against Tharp, that was not knowledge of a "disputed evidentiary fact[]" in the present criminal case. *Cunningham*, 2012 IL App (3d) 100013, ¶ 15. Therefore, Fultz saw no reasonable basis for claiming that Judge Belz was disqualified.

¶ 16                              2. *Defendant's Allegations Against Tharp*

¶ 17            Fultz explained that Tharp was disqualified to be the prosecutor in this case (the burglary case) only if she was "interested" in this case (55 ILCS 5/3-9008 (West 2010)) and that she was so "interested" only if (1) she was "interested as a private individual" in this case, (2) she was "an actual party" to this case, or (3) her "continued participation would create the appearance of impropriety in the prosecution of *** defendant." *People v. Bickerstaff*, 403 Ill. App. 3d 347, 352 (2010). Obviously, Tharp was not an actual party to this case. Nor did Fultz see any evidence that Tharp had been interested as a private individual in this case, in the sense that she had some personal claim, status, or right that depended on the outcome. Rather, defendant seemed to allege that Tharp's participation as the prosecutor in this case created an appearance of impropriety in that she allegedly had made a "racist" comment against him at the conclusion of a

- 4 -

prior case, namely: " 'If I get a chance to prosecute you again, I will win at all costs.' " Fultz did not think it was arguable that this alleged comment, made outside the trial, required Tharp's disqualification. Defendant alleged that part of the "cost" that Tharp was willing to pay for his prosecution was jury-tampering, but Fultz saw "no evidence to support the allegation that Tharp interacted with jurors during deliberations."

¶ 18  **D. The Trial Court Allows Postconviction Counsel To Withdraw and Grants the State's Motion for Dismissal With Prejudice**

¶ 19  On January 22, 2014, in a telephonic conference, the trial court granted Fultz's motion to withdraw and granted the State's motion to dismiss the *pro se* petition with prejudice. In a docket entry, the court explained: "The Court finds the petition states no specific facts which would entitle [defendant] to relief. Additionally, the Defendant has failed to raise any claim of error which could not have [been] raised on direct appeal in this case."

¶ 20  The record contains no certificate pursuant to Rule 651(c).

¶ 21  **E. The *Pro Se* Notice of Appeal**

¶ 22  On February 3, 2014, defendant filed a *pro se* notice of appeal. Under the heading of "Facts," the notice made the following representations (among others).

¶ 23  On December 13, 2011, Fultz "filed a motion to remove [a] copy of [defendant's] court file from the Sangamon County courthouse."

¶ 24  On January 24, 21012, defendant received his first letter from Fultz. According to this letter, Fultz and another attorney, Kelly Greco, were "working on an amended postconviction petition on [his] behalf and that they would meet with [him] and sit down with [him] within the next 90 days." (We are quoting from the *pro se* notice of appeal.)

¶ 25    On May 8, 2012, defendant received a second letter from Fultz, which informed him that Fultz " 'was suspending work on [the] postconviction petition until a ruling ha[d] been made on [defendant's direct] appeal."

¶ 26    On March 21, 2013, defendant received a copy of Fultz's motion to withdraw, along with a letter "to let [him] know [that Fultz] would come see him in June 2013."

¶ 27    On July 18, 2013, defendant received another letter from Fultz, which stated: " 'This letter responds to your letter dated June 28, 2013. You raise a number of interesting issues regarding your lawsuit against the Sangamon County State's Attorney's office. However[,] we have not been appointed to represent you in that matter.' "

¶ 28    On September 23, 2013, defendant received a letter informing him that his attorneys would come visit him on October 2, 2013, "to discuss the status of [his] postconviction petition."

¶ 29    This visit on October 2, 2013, was "the first and only time" when defendant met with his appointed postconviction counsel. Defendant described the visit as follows:

    "While having the interview, said attorney was very disrespectful to me. He, Daniel L. Fultz, had made homosexual jokes about what men are doing in prison. And said comments [do not] apply to my personal life. Nor was such communication ever invited by me at any time.

    When I was trying to explain some of my other legal issues that dealt with my civil rights being 100% violated in my #3-08-0511 direct appeal in the Illinois Third District appellate court by the clerk, Gist Fleshman, failing to notify me of the November 19,

2008, order of Honorable Mary K. O'Brien, this attorney had started making *** comments about 'how he knows said judge personally ***, yes I know her.'

On this visitation[,] said attorney, Daniel L. Fultz, had brought another attorney with him by the name of Kelly Greco, and if this court would grant me a fair in-court hearing with said attorney, Kelly Greco, to be placed under oath of penalty of perjury, said lawyer will 100% verify that attorney Daniel L. Fultz had made sexual harassment statements which made me very uncomfortable which was uncalled for period. I clearly feel I was subjected to a form of sexual harassment by the mentioned attorney and their[] questions, that I can ask, under oath, to attorney Kelly Greco that will 100% support my claims and by law I should 100% be entitled to show ineffective assistance of postconviction counsel."

¶ 30                              II. ANALYSIS

¶ 31          We have interpreted *People v. Greer*, 212 Ill. 2d 192, 212 (2004), as holding that an appointed postconviction counsel may withdraw "only after counsel complied with Rule 651(c)." *People v. Heard*, 2014 IL App (4th) 120833, ¶ 12; see also *People v. Shortridge*, 2012 IL App (4th) 100663, ¶ 15 ("If newly appointed counsel, after complying with the mandates of Rule 651, determines that defendant's petition lacks any meritorious issue, then he should move to withdraw as counsel."). (Recently, in *Kuehner*, 2015 IL 117695, ¶ 21, the supreme court

imposed an additional requirement: the motion to withdraw must explain why each of the claims in the *pro se* petition is frivolous or patently without merit.)

¶ 32    Rule 651(c) provides:

"The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

¶ 33    A certificate pursuant to Rule 651(c) raises a presumption of compliance with that rule. *People v. Johnson*, 232 Ill. App. 3d 674, 678 (1992). In the absence of such a certificate, "a clear and affirmative showing of compliance on the record must be present." *People v. Richardson*, 382 Ill. App. 3d 248, 256 (2008).

¶ 34    The State agrees that the record in this case lacks a certificate pursuant to Rule 651(c). Even so, in the State's view, the record shows compliance with that rule. Citing defendant's *pro se* notice of appeal, the State argues:

"While counsel did not file a [Rule] 651(c) certificate, defendant filed a *pro se* notice of appeal elaborating on appointed counsel's representation of him and stating that he received letters from attorney Fultz on January 24, 2012, May 8, 2012, June 21, 2012, and July 18, 2013. [Citation.] In addition, Fultz met with

- 8 -

defendant personally on October 2, 2013. [Citation.] Therefore, the record demonstrates that counsel consulted with defendant to ascertain his contentions of constitutional deprivation. Moreover, on December 13, 2011, the circuit court granted appointed counsel's motion for removal of defendant's entire court file to thoroughly review and meet Supreme Court Rules. [Citation.] The motion for leave to withdraw cited to the record and stated that, after careful examination of the record, defendant had no meritorious issues to be alleged in a postconviction petition. [Citation.]"

¶ 35 We disagree with the State when it says, in reliance on defendant's *pro se* notice of appeal: "[T]he record demonstrates that counsel consulted with defendant to ascertain his contentions of constitutional deprivation." Judging from defendant's description of the correspondence, it contained no discussion at all of his contentions of constitutional deprivation—or at least the contentions he makes in the present case. As for the meeting of October 2, 2013, it appears, from the *pro se* notice of appeal, that the topics of discussion were sexual behavior in prison, Fultz's acquaintance with a judge, and clerical misfeasance in a Third District case—not the claims in defendant's *pro se* petition.

¶ 36 "[W]ithout a showing that postconviction counsel fulfilled the rule's requirements, we cannot conclude that the defendant was provided with adequate representation." *People v. Myers*, 386 Ill. App. 3d 860, 866 (2008). "Counsel's failure to comply with the requirements of Rule 651(c) mandates that this matter be remanded to the circuit court." *Id.*

¶ 37     We note that, before withdrawing, postconviction counsel can quite consistently certify that he or she has "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb 6, 2013)

¶ 38     . Such a certificate does not imply that counsel has seen fit to amend the *pro se* petition. The operative qualifying words are "any" and "necessary." *Id.* "If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Greer*, 212 Ill. 2d at 205.

¶ 39                    III. CONCLUSION

¶ 40     For the reasons stated, we reverse the trial court's judgment, and we remand this case for further proceedings.

¶ 41     Reversed and remanded.