NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2022 IL App (4th) 200309-U

NO. 4-20-0309

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 18, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| WILLIE JAMES CHERRY, | ) | No. 10CF42 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

---

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, concluding postconviction counsel provided
reasonable assistance.

¶ 2     In March 2014, defendant, Willie James Cherry, filed a *pro se* postconviction petition. In February 2020, the State moved to dismiss defendant's petition. In July 2020, the trial court dismissed defendant's postconviction petition.

¶ 3     Defendant appeals, arguing postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and provided unreasonable assistance when she did not certify she made the necessary amendments to adequately present defendant's claims and adopted the *pro se* petition without making any amendments or shaping the claims into the proper legal form. For the following reasons, we affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5    In January 2010, the State charged defendant with three counts of predatory criminal sexual assault, alleging defendant committed an act of sexual penetration with (1) K.W., who was under 13 years of age, and the act involved defendant's penis and K.W.'s anus (count I); (2) K.W. and the act involved defendant's penis and K.W.'s mouth (count II); and (3) K.M.W., who was under 13 years of age, and the act involved defendant's penis and K.M.W.'s anus (count III).

¶ 6    During the March 2011 trial, the State established that K.W. and K.M.W. lived with their grandmother, Julia Howard, at the time of the offense. In the late 1990s, a friend introduced Howard and defendant and the two later began dating. In 2000, defendant occasionally babysat K.W., K.M.W., and their sibling, Kh.W. K.M.W. testified that, one morning when Howard was gone, defendant asked her to go to a bedroom with him. According to K.M.W., she ended up unclothed on the bed on her stomach and defendant "put his penis in [her] butt." K.M.W. testified this happened more than once but fewer than 10 times. Kh.W. testified he got up one night and observed defendant having sexual intercourse with K.M.W. through an open bedroom door.

¶ 7    Defendant was interviewed in November 2009, and he stated he occasionally watched Howard's grandchildren when he dated Howard approximately 10 years before. Later in the interview, defendant denied ever being alone with the children and denied abusing the children. At trial, defendant testified he watched Howard's children while Howard was gone. Defendant testified his relationship with Howard ended when he reconciled with his wife in late 1999. Defendant denied abusing the children. Dottie Cherry, defendant's wife, testified she and defendant separated for a time in 1999. According to Dottie, she and defendant reconciled in

December 1999. Dottie testified she knew of Howard during the time she was separated from defendant.

¶ 8       The jury found defendant not guilty of counts I and II and guilty of count III. In June 2011, the trial court sentenced defendant to 20 years' imprisonment followed by a 3-year term of mandatory supervised release. On direct appeal, defendant argued (1) the court erred in admonishing the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), (2) the court erred by advising the jurors that the State was not required to prove the dates alleged in the indictment, and (3) the State failed to prove defendant guilty beyond a reasonable doubt. In November 2012, this court affirmed. *People v. Cherry*, 2012 IL App (4th) 110624-U.

¶ 9       In March 2014, defendant filed a *pro se* postconviction petition. The petition raised 25 claims. In relevant part, the claims included an allegation that trial counsel failed to use an expert-accepted study in defending against the allegations of child abuse and counsel failed to investigate five witnesses identified before trial (claim six). According to the petition, Robert Freyman, a probation officer, would testify that Howard tried to convince him that defendant had violated his probation by lying about the death of defendant's cousin. Brandi Russell would testify that Howard tried to get defendant into trouble with his probation officer and that Howard threatened defendant. Jimmy Rodgers, a deacon at defendant's church, would testify about Howard's vindictiveness. Michael Farmer, defendant's former neighbor, would testify that defendant worked full-time in 1999. Finally, Michael Mitchell would testify that defendant worked in his hat shop in 1999.

¶ 10      The petition also alleged trial counsel and the trial court failed to conduct a fitness hearing where counsel knew defendant was taking trazodone hydrochloride with side effects including difficulty breathing, facial swelling, mood or behavior changes, anxiety, panic attacks,

trouble sleeping, impulsivity, irritability, hostility, aggressiveness, restlessness, hyperactivity, depression, and suicidal thoughts. The petition alleged the medication prevented defendant from consulting with his lawyer. Defendant also alleged trial counsel failed to sufficiently consult with defendant "before changing the venue from judge Charles G. Reynard to judge Jame[s] E. Souk without giv[ing] [defendant] a heads up on what was going on."

¶ 11　　　　Defendant attached his affidavit reiterating the testimony the five witnesses would give as alleged in claim six. Defendant also attached an affidavit in the name of his wife, Dottie, although defendant signed the affidavit. According to the second affidavit, Dottie would testify that Howard committed perjury when she testified that defendant babysat while she worked, that defendant lived with her in 2000, and that she did not know defendant was married. Defendant averred his trial counsel was given the names of witnesses and never interviewed them.

¶ 12　　　　Six days after filing his postconviction petition, defendant filed a letter asking for leave to add an affidavit from Brandi Russell to his petition. In the affidavit, Russell averred she started dating defendant in December 1999. Russell received a phone call from Howard who told Russell defendant had molested her grandchildren. According to Russell, Howard "also 3 way called [defendant's] probation officer." Howard tried to keep Russell from dating defendant and threatened to get back at defendant. Russell moved in with defendant after Valentine's Day and witnessed a property dispute between defendant and Howard. Russell averred Howard "was jilted [and] looking for revenge."

¶ 13　　　　In June 2014, the trial court appointed counsel to represent defendant in second-stage postconviction proceedings. In August 2014, Carey Luckman entered an appearance on behalf of defendant. Thereafter, Luckman asked for regular continuances before withdrawing in August 2018. In January 2019, Kelly Harms appeared on defendant's behalf and

sought a continuance to file an amended postconviction petition. In June 2019, Harms filed a motion for a finding of no merit in the postconviction petition and a motion to withdraw. In her accompanying brief, Harms stated that trial counsel's failure to investigate and present witnesses that would testify defendant did not live with Howard in 2000 as an alibi defense was not ineffective assistance because defendant admitted to babysitting the children. As to the evidence of Howard's motive to lie, Harms stated, "There is no way that testimony regarding [Howard's] past jealousy issues and vindictive behavior after [defendant] left her and went back to his wife give rise to the inference that the three children who testified had something to gain or lose by testifying that two of them had suffered sexual abuse at the hands of [defendant.]" Harms also stated trial counsel was allowed to explore why the abuse was not disclosed until nearly 10 years after it happened.

¶ 14 Harms addressed defendant's claim that trial counsel failed to adequately communicate with him. According to Harms, the record demonstrated trial counsel kept petitioner informed of what was happening with his case where counsel indicated at a hearing he needed time to speak with defendant. Harms also indicated there were notes in trial counsel's file about visits with defendant and a letter from trial counsel to defendant about the judge changing. As to defendant's claim that trial counsel was ineffective for failing to have him evaluated for fitness, Harms noted that during the trial court's inquiry as to whether defendant chose to testify and understood the ramifications, defendant understood the questions and answered coherently. Further, Harms stated trial counsel had copies of defendant's medical file from the jail which showed many of the medications he took and the ailments he faced.

¶ 15 Included with the motion to withdraw, Harms filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The certificate indicated Harms

consulted with defendant to ascertain his contentions of deprivation of constitutional rights and examined the record of proceedings at trial. The certificate stated, "Undersigned counsel has attempted to make amendments to the *pro se* petition necessary for adequate presentation of [defendant's] proceedings; however, undersigned counsel finds the *pro se* petition to be without merit."

¶ 16        In August 2019, the trial court held a hearing on Harms's motion to withdraw. Harms stated she thoroughly reviewed defendant's case and spoke with him at great length on several occasions. Harms researched each of the issues set forth in the *pro se* petition and looked for any additional issues. Harms said she did not feel there were any meritorious issues and asked to withdraw.

¶ 17        The trial court noted it needed to be "extremely careful with reference to its findings *** so no inference is either intended to be drawn or drawn by counsel with reference to the [c]ourt's ruling on the motion." The court noted it was not ruling on a motion to dismiss but rather "a motion for finding of no merit in postconviction." The court further stated it had made an affirmative determination at the first stage that one or more allegations in the *pro se* petition was neither frivolous nor patently without merit and postconviction counsel's responsibility was to present the petition to the court in proper legal form. The court stated it could not address each of the claims in the *pro se* postconviction petition but must view the petition as a whole. The court went on to state as follows:

> "And so the [c]ourt is not making any findings concerning each of
> the claims at this time if the [c]ourt makes the determination that at
> least one of the claims could or might be required to be advanced
> to a Stage 3 hearing. And since there are, from the [c]ourt's

perspective, at least three of those claims, that being Claim 6,

Claim 11[,] and Claim 20, that would require the [c]ourt to engage

in fact finding which is not permissible at this time because it also

would include as contained within the motion filed by Ms. Harms

for the [c]ourt to consider matters outside of the record, matters

that are contained within trial counsel's file which is not available

to the [c]ourt and nor is it admissible or can it be considered by the

[c]ourt as it relates to this particular motion at this time that

prevents the [c]ourt from granting the relief that Ms. Harms is

seeking."

The court noted that although the motion to withdraw was well-taken with regards to many of the claims, the court could not address them on an individual basis. Accordingly, the court denied the motion to withdraw and allowed the State time to elect to file an answer or a motion to dismiss. Postconviction counsel adopted the original *pro se* postconviction petition.

¶ 18          In February 2020, the State filed a motion to dismiss defendant's postconviction petition. The State argued the petition was unsupported by sufficient affidavits where defendant's affidavit was silent on all but one of the claims raised. The State argued the second affidavit with Dottie's name consisted of conclusory statements and hearsay. The State first noted defendant failed to attach affidavits from any of the five witnesses identified in claim six and failed to explain the omission of those affidavits. The State noted that, even if defendant's affidavit was sufficient to support his claim that defense counsel was ineffective for failing to investigate and call witnesses regarding Howard's vindictive nature or challenging defendant's opportunity to commit the offenses, defendant could not establish prejudice. The State noted this

court recognized defendant's admission that he had access to the children on multiple occasions. While defense counsel may have impeached Howard's testimony by inquiring into her bias against defendant, the State argued she did not testify to the underlying criminal conduct and her testimony had little bearing on defendant's conviction. As to defendant's claim regarding trial counsel's failure to request a fitness hearing, the State argued defendant failed to support his claim with medical records or affidavits establishing a reasonable probability that he would have been found unfit had a fitness hearing been held.

¶ 19　　　In July 2020, the trial court held a hearing on the State's motion to dismiss defendant's postconviction petition. Postconviction counsel argued a third-stage evidentiary hearing was necessary to hear from trial counsel about why he did or did not take certain actions and whether his decisions were matters of trial strategy. The court noted postconviction counsel had ample opportunity to file an amended petition or additional affidavits. The court dismissed the first five claims in the petition as lacking support or specificity, matters of trial strategy, baseless, conclusory, and barred by *res judicata*. As to claim six, the court noted defendant identified particular witnesses trial counsel was informed of but, despite having ample opportunity to do so, defendant failed to include affidavits from the witnesses. However, the court determined defendant's summary established the witnesses would have testified to Howard's vindictiveness and trial counsel's decision not to pursue this line of inquiry was a matter of trial strategy, particularly where the testimony would be inadmissible or limited to Howard's truthfulness and Howard was not the victim. The court dismissed claims 7 through 10 as barred by *res judicata*, conclusory, unsupported, and speculative. As to the claim that trial counsel was ineffective for failing to request a fitness hearing, the court agreed with the State that defendant failed to support the claim with medical records or affidavits establishing a

reasonable probability that defendant would have been found unfit if a fitness hearing had been held. Moreover, the court noted a defendant is presumed fit and the record did not indicate a *bona fide* doubt as to his fitness.

¶ 20        The trial court dismissed claims 12 through 19 as matters of trial strategy, lacking a showing of prejudice, conclusory, barred by *res judicata*, and baseless. As to the claim that trial counsel was ineffective for failing to adequately communicate with defendant about a transition from one judge to another because of a change in assignments, the court noted defendant failed to allege he would have exercised his right to a substitution of judge and the record showed he did not avail himself of the opportunity to inform counsel he wanted a different judge after he was made aware of the change. The court dismissed the remaining claims as conclusory or meritless. In summary, the court noted the postconviction petition was only supported by defendant's affidavit, which was silent on all but one of defendant's claims, and the petition failed to explain the omission of any affidavits or other records. Finally, the court noted that, even if trial counsel's performance fell below an objective standard of reasonableness, defendant was unable to show he was prejudiced by any of trial counsel's decisions.

¶ 21        This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23        On appeal, defendant argues postconviction counsel failed to comply with Rule 651(c) and provided unreasonable assistance when she did not certify she made the necessary amendments to adequately present defendant's claims and adopted the *pro se* petition without making any amendments or shaping the claims into the proper legal form.

- 9 -

¶ 24          The Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-7 (West 2018)) provides a collateral means for a defendant to challenge a conviction or sentence for a violation of a federal or state constitutional right. *People v. Jones*, 211 Ill. 2d 140, 143, 809 N.E.2d 1233, 1236 (2004). At the first stage of postconviction proceedings, the trial court must determine, taking the allegations as true, whether the defendant's petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). At the second stage of postconviction proceedings, "the State may move to dismiss a petition or an amended petition pending before the court." *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1008 (2006). The defendant bears the burden of making a substantial showing of a constitutional violation. *Id.* at 473. "At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *Id.*

¶ 25          "[A] defendant in postconviction proceedings is entitled to only a 'reasonable' level of assistance, which is less than that afforded by the federal or state constitutions." *Id.* at 472. Pursuant to Rule 651(c), counsel's duties "include consultation with the defendant to ascertain his contentions of deprivation of constitutional right, examination of the record of the proceedings at the trial, and amendment of the petition, if necessary, to ensure that defendant's contentions are adequately presented." *Id.* "Our review of an attorney's compliance with a supreme court rule, as well as the dismissal of a postconviction petition on motion of the State, is *de novo*." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17, 974 N.E.2d 813.

¶ 26          The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Jones*, 2011 IL App (1st)

092529, ¶ 23, 955 N.E.2d 1200. "Rule 651(c) requires only that postconviction counsel certify having undertaken the limited actions prescribed. Those requirements do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position." *People v. Custer*, 2019 IL 123339, ¶ 38, 155 N.E.3d 374. With respect to counsel's duty to submit affidavits, the supreme court has stated, "In the ordinary case, a trial court ruling upon a motion to dismiss a [postconviction] petition which is not supported by affidavits or other documents may reasonably presume that [postconviction] counsel made a concerted effort to obtain affidavits in support of the [postconviction] claims, but was unable to do so." *People v. Johnson*, 154 Ill. 2d 227, 241, 609 N.E.2d 304, 311 (1993). The defendant bears the burden of overcoming the presumption of reasonable assistance by demonstrating his attorney's failure to substantially comply with Rule 651(c). *Jones*, 2011 IL App (1st) 092529, ¶ 23.

¶ 27        Defendant first asserts Harms never certified she made the necessary changes and amendments to defendant's petition to adequately present his claims, so her certificate did not create the presumption of compliance with Rule 651(c). Specifically, defendant asserts that Harms's certificate stated she "attempted to make amendments to the *pro se* petition necessary for adequate presentation of [defendant's] proceedings; however, undersigned counsel finds the *pro se* petition to be without merit." Defendant argues that Harms's statement that she *attempted* to make any amendments necessary for the adequate presentation of defendant's claims indicates she failed to comply with Rule 651(c)'s requirement that postconviction counsel certify he or she "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 28	As the State correctly points out, this court has "note[d] that, before withdrawing, postconviction counsel can quite consistently certify that he or she 'has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions.' " *People v. Smith*, 2016 IL App (4th) 140085, ¶ 37, 50 N.E.3d 353 (quoting Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)).  This court explained that such a certification does not mean that postconviction counsel has concluded the *pro se* petition requires amendment.  "The operative qualifying words are 'any' and 'necessary.'  [Citation.]  'If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule.' "  *Id.* ¶ 38 (quoting *People v. Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 519 (2004)).  Although the certification filed by Harms indicated she attempted to make necessary amendments, it does not follow that she concluded there *were* necessary amendments to adequately present defendant's claims.  We note defendant also relies on *Smith* for the proposition that Harms's unsuccessful attempt to withdraw from the case "does not excuse her failure to certify that she actually made the necessary alterations to shape [defendant's] claims into proper legal form."  This argument assumes there were necessary amendments.  Here, Harms's certificate indicates she would have made any necessary amendments, but she found the claims to be meritless and any amendment was therefore unnecessary.

¶ 29	Under these circumstances, we conclude postconviction counsel exercised her professional judgment in her representation of defendant and substantially complied with Rule 651(c), giving rise to a rebuttable presumption of reasonable assistance.  *People v. Richardson*, 382 Ill. App. 3d 248, 257, 888 N.E.2d 553, 561 (2008) (finding substantial compliance with Rule 651(c) where counsel certified she prepared a supplemental petition that adequately

- 12 -

complemented the defendant's claims and did not improperly defer to the defendant's wishes); but *cf. People v. Bashaw*, 361 Ill. App. 3d 963, 967-69, 838 N.E.2d 972, 976-77 (2005) (finding no substantial compliance with Rule 651(c) where counsel certified she reviewed the record of proceedings on appeal and the defendant indicated he wished to rely on his original postconviction petition, which the court concluded was a failure of counsel to fulfill their duty to exercise professional judgment because counsel improperly surrendered the decision about what amendments to make to defendant).

¶ 30        Defendant argues that, even if Harms's certification substantially complied with Rule 651(c), the record affirmatively refutes that Harms made the necessary amendments to defendant's claims. Defendant asserts amendment was necessary after the trial court denied Harms's motion to withdraw and concluded some of the claims in the petition had merit. In response, the State argues that postconviction counsel has no duty to amend a *pro se* petition. As discussed above, "Rule 651(c) requires only that postconviction counsel certify having undertaken the limited actions prescribed. Those requirements do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position." *Custer*, 2019 IL 123339, ¶ 38. Although the court concluded some of the claims in defendant's *pro se* petition had merit, it does not follow that counsel was required to amend the petition. Where postconviction counsel finds "all the claims in the petition to be frivolous, the appropriate procedure would have been to stand on the *pro se* petition or seek to withdraw as counsel." *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 22, 100 N.E.3d 193. Here, postconviction counsel determined the claims were without merit, unsuccessfully sought to withdraw, and stood on the *pro se* petition.

- 13 -

¶ 31            Defendant places great weight on postconviction counsel's failure to amend the *pro se* petition by attaching Russell's affidavit. As noted, the Russell affidavit was filed six days after defendant filed his *pro se* petition. Nothing in the record affirmatively shows a failure by postconviction counsel to adequately support this claim. Although the trial court and the State failed to mention Russell's affidavit, the affidavit was filed in the circuit court and included in the record. Where defendant filed a motion for leave to add Russell's affidavit to his postconviction petition, we cannot say that postconviction counsel provided unreasonable assistance by failing to amend the petition to include the affidavit. In his reply brief, defendant contends the subsequent filing of Russell's affidavit was insufficient to place it in the record before the trial court because "a circuit court must grant the petitioner leave to amend the petition before a subsequent pleading is considered as part of the parties' pleadings." In support of this contention, defendant cites *People v. Smith*, 2013 IL App (4th) 110220, ¶ 23, 986 N.E.2d 1274. However, *Smith* involved a situation where the defendant attempted to "amend" a postconviction petition with new substantive petitions after the trial court had entered a final order dismissing the petition. *Id.* The *Smith* court concluded the subsequent petitions filed by the defendant "must be considered successive petitions." *Id.* Nothing in *Smith* suggests that an additional affidavit filed six days after filing the *pro se* petition cannot be considered a part of the pleadings. As for the other witnesses identified in claim six, we "may reasonably presume that [postconviction] counsel made a concerted effort to obtain affidavits in support of the [postconviction] claims, but was unable to do so." *Johnson*, 154 Ill. 2d at 241. Moreover, although the trial court did note that defendant failed to include affidavits from the witnesses identified in claim six, the court further concluded that trial counsel's decision not to pursue a line of inquiry into Howard's vindictiveness was a matter of trial strategy, particularly where the

testimony would be inadmissible or limited to Howard's truthfulness and Howard was not the victim.

¶ 32 Defendant also argues postconviction counsel provided unreasonable assistance by failing to amend the petition to include mental health records to support defendant's claim that there was a *bona fide* doubt as to his fitness to stand trial. However, defendant points to no affirmative evidence in the record to establish that postconviction counsel failed to seek out and examine evidence relevant to this claim. Rather, he notes that Harms acknowledged there were medical records in trial counsel's file and failed to attach medical records from the jail. Contrary to defendant's argument, this indicates postconviction counsel did seek evidentiary support for defendant's claim and was presumably unsuccessful. *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 27, 67 N.E.3d 976 ("A court may reasonably presume postconviction counsel made a concerted effort to obtain evidence in support of postconviction claims, but was unsuccessful.").

¶ 33 Defendant also argues postconviction counsel failed to amend the petition to include sufficient detail on defendant's claims regarding expert testimony on child abuse allegations and on an investigation technique employed by the detectives. Defendant further asserts postconviction counsel failed to provide any details about how trial counsel's failure to investigate the apartments where the abuse occurred prejudiced defendant. Again, we "may reasonably presume postconviction counsel made a concerted effort to obtain evidence in support of postconviction claims, but was unsuccessful." *Id.* As discussed above, we conclude postconviction counsel's certificate was substantially in compliance with Rule 651(c) and gave rise to the rebuttable presumption of reasonable assistance. Defendant has failed to demonstrate the record affirmatively rebuts this presumption. Accordingly, we conclude postconviction

counsel provided reasonable assistance and complied with Rule 651(c).  Therefore, we affirm the judgment of the trial court.

¶ 34                                  III. CONCLUSION

¶ 35           For the reasons stated, we affirm the trial court's judgment.

¶ 36           Affirmed.