NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210351-U

NO. 4-21-0351

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 1, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MICHAEL BRIAN BROWN, | ) | No. 08CF181 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Casey Costigan, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant was denied reasonable representation during proceedings
under the Post-Conviction Hearing Act.

¶ 2    Defendant, Michael Brian Brown, appeals the circuit court's dismissal of his

petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West

2010)). On appeal, defendant argues (1) he was denied his right to the reasonable assistance of

counsel as postconviction counsel failed to examine the record of proceedings and make

amendments necessary to present his claims adequately; and (2) he made a substantial showing

trial counsel was ineffective as he misadvised defendant regarding the length of the sentences he

faced, leading defendant to reject the trial court's offer to give the jury an instruction on second

degree murder. We agree with defendant's first argument and reverse and remand.

¶ 3                          I. BACKGROUND

¶ 4        In February 2008, defendant shot and killed Calvin and David Walls. The shooting occurred after an altercation at defendant's apartment. Defendant fired a minimum of 14 shots, causing at least 11 gunshot wounds to the victims and two others at the scene. As a result of the shooting, the State charged defendant with six counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)) and two counts of aggravated battery with a firearm for wounding Levar Walls, the victims' brother, and Montell Jones, defendant's cousin (720 ILCS 5/12-4.2(a)(1) (West 2008)).

¶ 5                                A. Trial

¶ 6        At trial, defendant pursued theories of self-defense and defense of property. Only a short summary of the evidence is necessary for this appeal. Regarding Levar, defendant testified Levar entered defendant's apartment, waved a knife around, and swung the knife at him. Defendant emphasized a knife was found on the living room floor under a fish tank. The State countered with evidence explaining the knife's presence in Levar's apartment, the absence of knife wounds found on anyone involved in the altercation, and the absence of corroborating testimony placing a knife in Levar's hands. Regarding the shooting of Calvin and David, defendant argued both attacked him. Defendant testified he was physically close to David and Calvin when they tried to grab his gun. The State countered with evidence showing how many times defendant fired the gun and that four of the five wounds to Calvin and David resulted from defendant's firing the gun at a distance of greater than two feet. The State also presented testimony showing the location of the wounds was inconsistent with defendant's testimony.

¶ 7        At the jury-instruction conference, the trial court questioned defendant regarding his decision not to request an instruction for second degree murder:

"THE COURT: [Defendant], as your attorney just

- 2 -

indicated, sir, you have been charged in the indictment with the offense of first degree murder. There is what is often referred to as a lesser included offense of second degree murder. And at your request based upon the evidence that's been presented in this case, the court would instruct the jury on the offense of second degree murder, that is, that they would have the option of determining whether or not you're guilty of first degree murder and if so then determining whether there was a mitigating factor to reduce it to second degree murder. [Defense counsel] has indicated that you have discussed these issues with your counsel. Is that correct, sir?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Do you feel like you've had enough time to talk to him about that issue?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel that you understand what that issue is?

THE DEFENDANT: I feel it's too confusing of an issue to the jury.

THE COURT: All right. You do feel that you understand the issue of second degree murder after talking to your counsel?

THE DEFENDANT: Yes.

THE COURT: Now, have you decided based on the advice he has given you that you do not want the jury instructed on the

issue of second degree murder?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And this is your decision?

THE DEFENDANT: Yes, sir."

¶ 8        During the same jury-instruction conference, the State tendered an instruction to inform the jury of the responsibilities of an initial aggressor before the use of force could be justified. The trial court denied the State's request, finding no one identified who started the physical altercation.

¶ 9        During deliberations, the jury asked the trial court about the legal justification for an initial aggressor to use force lawfully. The court, having concluded the State's tendered instruction answered the jury's question, reversed course and sent to the jury the initial-aggressor instruction.

¶ 10        The jury found defendant guilty of two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)) and of aggravated battery with a firearm of Levar (720 ILCS 5/12-4.2(a)(1) (West 2008)). Defendant was found not guilty of aggravated battery with a firearm of Jones. He was sentenced to natural life imprisonment for each first degree murder conviction and a concurrent term of 30 years for the aggravated battery conviction.

¶ 11                              B. Direct Appeal

¶ 12        In a direct appeal from his convictions and sentence, defendant argued (1) the trial court abused its discretion by giving the initial-aggressor instruction during deliberations, (2) the evidence was insufficient to support his convictions, and (3) he was entitled to credit against the imposed fines. *People v. Brown*, 406 Ill. App. 3d 1068, 1070, 952 N.E.2d 32, 34 (2011). With a modification to the fines, we affirmed the trial court's judgment. *Id.* at 1084. As to the issue

regarding the initial-aggressor instruction, we found the court did not abuse its discretion in instructing the jury. See *id.* at 1078-81.

¶ 13        After we affirmed defendant's conviction and sentence, defendant sought relief from both the Illinois Supreme Court and the United States Supreme Court. On September 28, 2011, the Illinois Supreme Court denied defendant's request for leave to appeal. In a petition for writ of *certiorari* postmarked December 28, 2011, defendant sought review by the United States Supreme Court. By letter dated January 5, 2012, defendant was informed his papers were being returned as his case had to be first reviewed by a United States Court of Appeals or by the highest state court. Defendant made no further attempt to file in the United States Supreme Court.

¶ 14                              C. Postconviction Proceedings

¶ 15        On June 11, 2011, defendant filed his *pro se* petition for postconviction relief. In his petition, defendant alleged he was denied the effective assistance of counsel as his trial counsel failed to inform him he was subject to a natural-life sentence if he was found guilty of both first degree murder counts. In support, defendant attached a letter, dated after trial concluded, from trial counsel, stating the following, in part:

> "Sentencing will occur after the post trial motion. First
> degree murder is punishable by 20 to 60 years in prison at 100%
> time. Personal discharge of [a] weapon which causes the death
> carries an additional 25 years at 85% time. For the court to impose
> natural life, it would have to find a prior conviction for first degree
> murder[,] which does not exist as these convictions are
> simultaneous. Further, I do not believe the first degree murder

sentences can be imposed consecutively. It would be unrealistic to expect a sentence less than 45 years (minimum on murder and the enhancement for discharge of the firearm[)]. What may be problematic is the aggravated[-]battery conviction can be run consecutive (6 to 30) and probably will as the [S]tate will argue it is mandatory that it does."

Defendant maintained he would not have agreed with trial counsel's advice to forego tendering the second degree murder instruction to the jury had he known he faced natural life in prison.

¶ 16    At the first stage of postconviction proceedings, the circuit court dismissed the petition as frivolous and patently without merit. The court concluded defendant's decision to forego the second degree murder instruction "was not objectively deficient based on the court's admonishments and the fact defendant clearly preferred, as a matter of trial strategy, to give the jury only the options of guilty of first degree murder or acquittal of first degree murder on the grounds of self-defense." *People v. Brown*, 2014 IL App (4th) 120887, ¶ 12, 19 N.E.3d 733. The court further concluded it, at arraignment, had fully advised defendant of the penalties he faced, including a sentence of natural life. *Id.*

¶ 17    On appeal from the dismissal, we concluded defendant's petition was not frivolous and patently without merit and remanded for second-stage proceedings. *Id.* ¶¶ 27, 29. First, we found the record established defendant was not admonished by the trial court at arraignment a natural-life sentence was mandatory if he were convicted of two first degree murders. *Id.* ¶ 21. We rejected the State's argument the decision not to request the second degree murder instruction was a strategic one and concluded "counsel's performance arguably fell below an objective standard of reasonableness" due in part to counsel's "fundamental

- 6 -

misunderstanding of the law." *Id.* ¶ 21. We further concluded "it is at least reasonably arguable defendant was prejudiced when the second-degree-murder instruction was not tendered," as the trial court determined the evidence was sufficient to give a self-defense instruction and defendant's allegations are not rebutted completely by the record. *Id.* ¶¶ 26-27.

¶ 18 At second-stage proceedings, counsel (initial postconviction counsel) was appointed and an amended petition for postconviction relief was filed. This petition asserts the following claims: (1) defendant was denied the effective assistance of trial counsel as he was not advised he faced a mandatory natural-life sentence if convicted of the first degree murder of both David and Calvin; (2) defendant was denied due process and a fair trial when the trial court gave the jury, mid-deliberations, the initial-aggressor instruction as he was denied the opportunity to defend against that instruction by tailoring arguments to it; and (3) defendant was denied a fair trial as the State failed to tender medical records documenting injuries to Levar, records that are "potential[ly] exculpatory" and "may have supported [defendant's] affirmative defense of self[-]defense and defense of dwelling." Attached to the petition was an affidavit, in which defendant asserted he, before the jury-instruction conference, conversed with trial counsel and was misinformed regarding potential sentences as argued in the petition.

¶ 19 The State moved to dismiss defendant's postconviction petition on multiple grounds. The State first argued defendant's postconviction petition was untimely, as it was filed more than six months after the Illinois Supreme Court denied his petition for leave to appeal. Next, the State argued defendant raised issues that could have been raised on direct appeal but were not and were, therefore, forfeited. The State further maintained, regarding Levar's medical records, the common-law record in this case shows those records were produced before trial by the State. The State emphasized had a request for those records been declined, that issue would

have been on the record and could have been raised on direct appeal. The State further argued *res judicata* barred the trial court from addressing the allegation regarding the initial-aggressor instruction, as it was litigated on direct appeal.

¶ 20 The circuit court granted the State's motion to dismiss. The court initially found, because defendant did not complete a petition for writ of *certiorari*, the postconviction petition was late and time barred. The court agreed with the State the postconviction petition needed to be filed within six months of the Illinois Supreme Court's decision denying defendant leave to appeal. The circuit court also found defendant's claims were barred by *res judicata*. The court concluded defendant knew, at sentencing, he was facing a mandatory life sentence and, therefore, the issue was ripe for appeal at the time of defendant's direct appeal. The court further concluded the issue of Levar's medical records was also barred by *res judicata*, as the issue could have been raised but was not. As to his claim regarding the initial-aggressor instruction to the jury, the court found the issue was decided on direct appeal and barred by *res judicata*.

¶ 21 On October 21, 2019, defendant filed a *pro se* motion to reconsider. Defendant argued the circuit court, though citing the correct provision of the Act, misapplied the time calculation. Defendant emphasized his postconviction petition was due to be filed six months from the date for filing a writ of *certiorari* petition. See 725 ILCS 5/122-1(c) (West 2010)). According to defendant, the Illinois Supreme Court denied leave on September 28, 2011. The date for filing a petition for writ of *certiorari* was 90 days later, or December 27, 2011. Defendant maintained he had six months from that date to file his petition. Defendant further alleged he was denied the reasonable assistance of postconviction counsel as counsel failed to know the evidence and know the law, specifically regarding the medical-records issue. Defendant further maintained once counsel amended the petition to include a *Brady* violation, he

was obligated to present the claim properly.

¶ 22     New counsel (successor postconviction counsel) was appointed to represent defendant on his motion to reconsider. That counsel filed an amended motion to reconsider. Regarding the timeliness of defendant's postconviction filing, successor postconviction counsel argued this court's decision in *People v. Robinson*, 2015 IL App (4th) 130815, ¶ 31, demonstrates the 90-day period did not begin to run until the Illinois Supreme Court entered its order denying defendant leave to appeal.

¶ 23     Successor postconviction counsel further argued defendant's claim of ineffective assistance based on improper advice on the length of potential sentences was not barred as it was based on matters outside the record and could not have been raised on direct appeal. Successor postconviction counsel further argued defendant was denied reasonable assistance as initial postconviction counsel failed to provide the correct calculations of the timeliness of the *pro se* petition and failed to include allegations of ineffective assistance of appellate counsel to prevent findings of *res judicata* for claims not raised before. In addition, while defendant believed there were additional photos or records not turned over by the State regarding Levar's injuries, records that would show Levar was shot while charging defendant and not retreating from him, initial postconviction counsel failed to attach those records or explain their absence. And successor postconviction counsel argued had initial postconviction counsel alleged the ineffective assistance of appellate counsel, this claim would not have been found to have been barred.

¶ 24     The circuit court entered an order denying the amended motion to reconsider. The court initially concluded it erred in dismissing the petition as untimely. Regarding the issue of the alleged advice regarding possible penalties, the circuit court found the following, in part:

"The issue of [defendant's] declining to submit a second

degree instruction was part of the record. In fact, it was addressed by the trial court and readily available to be addressed by the Appellate Court should [defendant] have chosen to raise it on direct appeal. Further, the issue is not the alleged erroneous advice about sentencing, but rather whether the evidence supports the giving of the instruction in the first place. If the evidence supports the giving of the instruction and [defendant] rejects it, he is employing an all[-]or[-]nothing strategy which has been recognized as a valid trial strategy. The strategy did not work in [defendant's] favor. [Defendant] could have raised this issue on direct appeal and did not do so. Therefore, the claim is barred by *Res Judicata*."

¶ 25    This appeal followed.

¶ 26                    II. ANALYSIS

¶ 27    The Act creates a process by which criminal defendants may assert a substantial denial of their constitutional rights occurred during the proceedings that led to their convictions. 725 ILCS 5/122-1 (West 2008). This process allows courts to consider constitutional issues "that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519, 749 N.E.2d 892, 901 (2001). Issues that were raised and decided on direct appeal may not, under the doctrine of *res judicata*, be considered in proceedings under the act. *Id.* Under the doctrine of forfeiture, claims that could have been raised on direct appeal but were not may also not be considered. See *People v. Blair*, 215 Ill. 2d 427, 443-44, 831 N.E.2d 604, 615 (2005). The defendant shoulders the burden of proving a substantial deprivation of his constitutional rights

occurred. *People v. Johnson*, 154 Ill. 2d 227, 239, 609 N.E.2d 304, 310 (1993).

¶ 28 When a criminal defendant seeks relief under the Act, that defendant does not have a constitutional right to the effective assistance of counsel. *People v. Cotto*, 2016 IL 119006, ¶ 29, 51 N.E.3d 802. Instead, the Act, which is a matter of legislative grace, only provides postconviction petitioners the right to *reasonable assistance*. *Id.* ¶¶ 29-30.

¶ 29 To ensure petitioners under the Act receive reasonable assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) outlines duties of appointed counsel. *People v. Turner*, 187 Ill. 2d 406, 411, 719 N.E.2d 725, 728 (1999). Appointed counsel must "consult with the petitioner to ascertain his contentions, examine the record of the trial proceedings, and make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's complaints." *People v. Nelson*, 2016 IL App (4th) 140168, ¶ 15, 49 N.E.3d 1007. This third obligation "does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 519 (2004). Counsel "who determines that defendant's claims are meritless cannot in good faith file an amended petition on behalf of defendant." *Id.*

¶ 30 Rule 651(c) further requires appointed counsel file a certificate stating counsel complied with its requirements. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). A Rule 651(c) certificate creates a presumption counsel afforded reasonable representation. See *People v. Smith*, 2016 IL App (4th) 140085, ¶ 32, 50 N.E.3d 353. The presumption is rebuttable; a defendant may overcome the presumption by establishing postconviction counsel did not substantially comply with the requirements of Rule 651(c). *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23, 955 N.E.2d 1200. If found, the absence of reasonable assistance cannot be excused by a determination defendant's claims did not contain a meritorious issue. *People v. Suarez*, 224 Ill.

2d 37, 51-52, 862 N.E.2d 977, 985 (2007). Noncompliance with Rule 651(c) will not be excused as harmless error. *Id.* at 51.

¶ 31    While defendant acknowledges postconviction counsel filed a Rule 651(c) certificate, he maintains he has shown he was denied the reasonable assistance of counsel during his postconviction proceedings. In asserting this argument, defendant alleges initial postconviction counsel provided unreasonable assistance by not alleging appellate counsel was ineffective on direct appeal for failing to argue the timing of the initial-aggressor instruction denied him due process. Defendant maintains this contention could have been raised on direct appeal but was not and thus the failure to add the allegation appellate counsel provided ineffective assistance prevented the adequate presentation of his claim. See *People v. Turner*, 187 Ill. 2d 406, 413, 719 N.E.2d 725, 729 (1999) (noting had counsel "amended the post-conviction petition to allege ineffective assistance of appellate counsel for failing to raise petitioner's claims on direct appeal, these claims would not have been barred by waiver"); see also See *Blair*, 215 Ill. 2d 427, 443-44 (observing the terms "waiver" and "forfeiture" have both been used to describe matters that were not raised but could have been raised on direct appeal and adopting "forfeiture" as the preferred term).

¶ 32    The State counters by arguing successor postconviction counsel remedied any alleged error by initial postconviction counsel in failing to add allegations of appellate counsel's ineffectiveness. The State emphasizes successive postconviction counsel asserted this claim before the trial court in the motion to reconsider the order granting the State's motion to dismiss.

¶ 33    We are not convinced; the error of initial postconviction counsel was not remedied. Successor postconviction counsel did not file an amended postconviction petition. Instead, successor postconviction counsel filed a motion to reconsider the order dismissing

defendant's amended postconviction petition. The purpose of a motion to reconsider is "to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law." See *People v. Rucker*, 2018 IL App (2d) 150855, ¶ 29, 127 N.E.3d 93 (quoting *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078, 872 N.E.2d 91, 103 (2007)). The motion does not amend a postconviction petition under the Act. Successor postconviction counsel thus did not remedy the flaws in the amended pleading but instead raised the issue of the lack of reasonable assistance to the circuit court. We note while the circuit court reversed course on the issue of the timeliness as a result of the motion to reconsider and found the other matters barred by *res judicata*, the circuit court did not address the issue of unreasonable assistance.

¶ 34 We agree with defendant that initial postconviction counsel did not add the necessary allegations to present defendant's claim he was denied due process. Although the circuit court found this claim barred by *res judicata* as it determined the argument was raised on direct appeal, the failure to add the allegation regarding appellate counsel's ineffectiveness would have prevented the circuit court from considering the merits of petitioner's claim. The drafting of this claim did not comply with Rule 651(c).

¶ 35 Defendant further contends initial postconviction counsel failed to provide reasonable assistance in the presentation of the claim based on *Brady v. Maryland*, 373 U.S. 83 (1963), the State's alleged failure to produce Levar's medical records. Defendant contends initial postconviction counsel provided unreasonable assistance as to this claim in one of two ways. First, counsel did not attach the evidence necessary, such as medical records, that would show the State violated *Brady* by not disclosing exculpatory or impeaching evidence. See *People v. Burt*, 205 Ill. 2d 28, 47, 792 N.E.2d 1250, 1263 (2001) (setting forth the elements of a *Brady*

claim, which includes the element the undisclosed evidence was favorable to the accused as being either exculpatory or impeaching). Second, the record demonstrates Levar's medical records were produced to defendant before trial, showing initial postconviction counsel did not examine the record before adding this claim, in violation of Rule 651(c).

¶ 36 The Act mandates postconviction petitions "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2012). The failure to comply with this requirement is fatal to a petitioner's claims. *People v. Johnson*, 154 Ill. 2d 227, 241, 609 N.E.2d 304, 310 (1993) (stating "our courts have specifically held that the absence of affidavits, records or other evidence in support of the post-conviction petition renders the petition insufficient to require an evidentiary hearing").

¶ 37 Despite this requirement, initial postconviction counsel added a meritless argument that could not have advanced to an evidentiary hearing. Without such documentation, the circuit court could not find a substantial showing of a constitutional violation had been made and the claim would not advance to a third-stage hearing.

¶ 38 Further troubling is the fact the record indicates Levar's medical records were produced by the State before trial, directly contradicting initial postconviction counsel's contention. While successor postconviction counsel indicated defendant's argument was the State excluded exculpatory portions of Levar's medical records, the amended postconviction petition does not support this assertion. In the amended postconviction petition, defendant asserts he "was never tendered medical records that documented injuries to Levar." The presence in the record of language showing the documents were produced demonstrates initial postconviction counsel did not review the record in satisfaction of Rule 651(c). Moreover, even if defendant's

contention was that the State failed to disclose part of the medical records, those medical records or a sworn affidavit to their content were necessary to present that claim.

¶ 39     Throughout its brief, the State asserts counsel's assistance should not be found unreasonable unless it amounts to "virtually no representation at all." See *Turner*, 187 Ill. 2d at 416. The State contends postconviction counsel's conduct does not fall to that level. However, we disagree. In his *pro se* petition, defendant presented one claim: he was denied the effective assistance of trial counsel due to counsel's improper advice regarding the sentences he faced. Initial postconviction counsel's amended petition added two claims that could not, as presented, advance to an evidentiary hearing, leaving him with only the claim raised in his *pro se* petition. Defendant thus had "virtually no representation at all."

¶ 40     Having found defendant is entitled to remand for the appointment of counsel and renewed second-stage proceedings, we need not address defendant's remaining arguments. Defendant's request for a third-stage evidentiary hearing on the ineffective-assistance-of-trial-counsel claim was dependent on a ruling against him on his unreasonable-assistance claims. We further note our decision "should not be construed as any indication of whether the allegations set forth in defendant's petition have merit." *People v. Shortridge*, 2012 IL App (4th) 100663, ¶ 15, 964 N.E.2d 679.

¶ 41                              III. CONCLUSION

¶ 42     We reverse the circuit court's judgment and remand for further proceedings.

¶ 43     Reversed and remanded.